## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

UNITED STATES OF AMERICA    )
    )
    v.    )    CAUSE NO.: 3:04-CR-62-TS
    )
CHRISTOPHER WABOL    )

## OPINION AND ORDER

On November 8, 2006, this Court found the Defendant, Christopher Wabol, not guilty
only by reason of insanity on charges that he made threatening, interstate telephone calls. On
December 21, 2006, the Court committed the Defendant to the custody of the United States
Attorney General on the ground that he was suffering from a mental disease or defect for which
his release would create a substantial risk of bodily injury to another person or serious damage to
the property of another. *See* 18 U.S.C. § 4243(e). Since then, the Defendant has remained
hospitalized at the Federal Medical Center in Butner, North Carolina. The Defendant contends
that he should be unconditionally discharged from the civil commitment because he is not now
suffering from a mental illness, and does not pose a substantial risk of injury to himself or others.

## BACKGROUND

The Defendant was indicted in the Northern District of Indiana, South Bend Division, for
making threatening interstate communications in violation of 18 U.S.C. § 875(c). The Defendant
was subsequently evaluated pursuant to 18 U.S.C. §§ 4241, 4242 and 4247 to determine both
whether he was insane at the time of the offense charged and whether he was suffering from a
mental disease or defect rendering him mentally incompetent to properly assist in his defense
and stand trial.

After finding that the Defendant was competent to stand trial, the Court conducted a

bench trial at the Butner Medical Center, and subsequently entered a Special Verdict of Not Guilty Only by Reason of Insanity. The Court found that the Defendant made telephone calls to his mother's phone number that met the elements of 18 U.S.C. § 875(c): the calls contained threats to injure the receiver, and the threats were made in the context and under such circumstances that a reasonable person would foresee that the statements would be interpreted by the person receiving the communication as a serious expression of an intention to inflict bodily injury or take the life of another individual. *See United States v. Stewart*, 411 F.3d 825, 828 (7th Cir. 2005) (setting forth the criminal elements of § 875(c)). The Court also found that Dr. Robert Cochrane, through his September 11, 2006, forensic report and his October 23, 2006, testimony, provided sufficient evidence for the Court to find by clear and convincing evidence that the Defendant, at the time of the offense, was suffering from a severe mental disorder (Schizoaffective Disorder, Bipolar Type) and was laboring under delusions such that he was unable to appreciate the nature and quality, or the wrongfulness, of his conduct.

As required by 18 U.S.C. § 4243(b), the Court ordered an examination of the Defendant to determine whether he was "suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to the property of another." *See* 18 U.S.C. § 4247(c)(4)(C) (setting forth the contents of a report ordered under § 4243). Dr. Cochrane, who has primary responsibility for the care of the Defendant, prepared a risk assessment report dated December 8, 2006. The report contained an analysis of risk and protective factors that have been shown to correlate positively and negatively with future violent behavior. The report also contained the opinion of a Risk Assessment Panel that interviewed the Defendant and discussed his case. The Panel concluded

that the Defendant presented a substantial risk of bodily injury and property damage to another person due to his mental illness, and opined that he be committed under the provisions of 18 U.S.C. § 4243. "Most noteworthy was his severe mental illness with ongoing delusional beliefs, his aggressive, impulsive and threatening behavior across several settings, and his poor insight and history of treatment non-compliance." (12-8-06 Report 17.)

After receiving Dr. Cochrane's report, the Court conducted a hearing to determine whether the Defendant should be released from custody or committed to the custody of the Attorney General. *See* 18 U.S.C. §§ 4243(c) & 4247(d). On December 21, 2006, the Court found that the Defendant did not prove that his release would not create a substantial risk of bodily injury to another person or serious damage to property of another due to a present mental disease or defect, and thus committed him to the custody of the Attorney General pursuant to § 4243(e) for release to the appropriate State official, or if no State would assume responsibility, for hospitalization for treatment in a suitable facility until the requirements of § 4243 were satisfied.

On June 19, 2007, the director at Butner prepared an annual report concerning the mental condition of the Defendant, which contained recommendations regarding the need for his continued commitment. In the report, Dr. Cochrane opined that, although the Defendant was behaviorally stable and his Schizoaffective Disorder symptoms were in partial remission, he continued his persecutory delusions and inappropriate affect and hostility. The report advised that, for reasons stated in the December 2006 risk assessment report, the Defendant continued to meet the criteria for commitment. In particular, "his paranoia, hostility, and poor insight make him a substantial risk of bodily injury or serious damage to the property of others if released to the community." (6-19-07 Report 3–4.) The report concluded:

> Until his symptoms are in better control, he is not appropriate for conditional release at this time. If and when he cooperates with treatment and conditional release planning, efforts will be underway to develop a plan to safely return him to the community.

(6-19-07 Report 4.)

On March 6, 2008, the Defendant requested a discharge hearing as contemplated by § 4247(h). The Court granted the Defendant's request for a hearing and ordered Dr. Cochrane, or other qualified person, to conduct a psychiatric or psychological examination of the Defendant and file the report under seal with the Court. The report was to state whether the Defendant had "recovered from his mental disease or defect to such an extent that his release, or his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment, would no longer create a substantial risk of bodily injury to another person or serious damage to property or another." 18 U.S.C. § 4243(f).

On June 20, Dr. Cochrane completed his report. On August 8, the Court conducted a hearing in which it heard testimony from Dr. Cochrane and Captain Darlene Harris and received exhibits. On September 30, the Defendant filed his Brief in Support of Motion for Discharge [DE 170]. On October 28, the Government responded [DE 171], and on November 20, the Defendant replied [DE 172].

**DISCUSSION**

Persons who are charged with a crime, and found not guilty only by reason of insanity, may not be held in civil commitment beyond the time when they are no longer mentally ill, or no longer pose a danger to themselves or others. *Foucha v. Louisiana*, 504 U.S. 71, 77 (1992). The relevant statute requires a defendant seeking discharge to prove, either by clear and convincing

evidence or by a preponderance of the evidence,[1] that he has recovered from his mental disease

or defect to such an extent that "his release would no longer create a substantial risk of bodily

injury to another person or serious damage to property of another," or that "his conditional

release under a prescribed regimen of medical, psychiatric, or psychological care or treatment

would no longer create a substantial risk of bodily injury to another person or serious damage to

property of another." 18 U.S.C. § 4243(f). If conditional release is appropriate, the court must

order that the defendant "be conditionally discharged under a prescribed regimen of medical,

psychiatric, or psychological care or treatment that has been prepared for him, that has been

certified to the court as appropriate by the director of the facility in which he is committed, and

that has been found by the court to be appropriate" and must "order, as an explicit condition of

release, that he comply with the prescribed regimen of medical, psychiatric, or psychological

care or treatment." *Id.*

## A.      Mental Disease or Defect

The Defendant suffers from a recognized mental illness, Schizoaffective Disorder,

---

[1] The "clear and convincing evidence" standard applies when the underlying offense of a person found not guilty by reason of insanity is "an offense involving bodily injury to, or serious damage to the property of, another person, or involving a substantial risk of such injury or damage." 18 U.S.C. § 4243(d). In all other instances, an acquittee must prove his lack of dangerousness by a preponderance of the evidence. *Id.* In its December 21, 2006, order committing the Defendant to the custody of the Attorney General, the Court was not required to determine the nature of the underlying offense because the Defendant failed his burden under both standards.

The parties do not present any analysis on the correct burden of proof, but appear to assume that the clear and convincing standard applies to the Defendant's offense. (Def.'s Br. 3, DE 170) ("If a confined person, such as Wabol, can prove by clear and convincing evidence . . . . "); (Govt's Br. 2; DE 171) ("Wabol has failed to show by clear and convincing evidence . . . .").

Bipolar Type. He currently takes sufficient doses of antipsychotic medication to alleviate some of his symptoms, such as mania or mood disturbance, thought disorganization, and hallucinations. (6-20-08 Report 4.) However, he refuses treatment to target his remaining psychotic symptoms, namely, his persecutory delusions, including the delusion that his mother is a body double put in place by the FBI or CIA. He also continues to demonstrate "inappropriate affect and hostility." (6-20-08 Report 4.)

The Defendant contends that he does not suffer from a mental illness, yet he does not suggest that his diagnosed Schizoaffective Disorder is not a mental disease or defect. Further, the Court does not take the Defendant to be arguing that the diagnosis of Schizoaffective Disorder is erroneous. He has not presented any medical or expert evidence to challenge the diagnosis. Instead, the Defendant focuses on the absence of psychotic symptoms (with the exception of his remaining delusions), and then downplays the impact of the delusions by pointing to Dr. Cochrane's acknowledgment during the evidentiary hearing that some people in the general population suffer from delusions but do not require confinement, and that the delusions in and of themselves do not necessarily lead to the conclusion that the Defendant is at risk of acting violently toward other people. (8-8-08 Evid. Hr'g 18.)

The record does not support any claim that the Defendant has "recovered" from his mental illness, only that some of his symptoms are in remission. Arguments about the impact of the Defendant's current symptoms do not provide proof that he is no longer suffering from a mental illness. *See, e.g., United States v. Murdoch*, 98 F.3d 472, 476 (9th Cir. 1996) (distinguishing between the symptoms or side-effects of a mental disease and the existence of the disease itself). Full recovery from his mental disease, however, is not necessary. The complete

absence of any mental disease is not the standard the Defendant must meet to be discharged. Rather, a person must only recover "to such an extent" that his release or conditional release would not pose a substantial risk of bodily injury to another person or serious damage to another's property. A remission of symptoms may satisfy this burden. Accordingly, the Court will consider the Defendant's arguments regarding his symptoms in its analysis of the risk that the Defendant would pose if discharged from Butner.

**B.**     **Dangerousness**

On June 2, 2008, the Risk Assessment Panel reconvened to determine if the Defendant's condition continued to meet the criteria for commitment. The Panel unanimously agreed that the Defendant continued to present a substantial risk of bodily harm to others or serious damage to property if he was released to the community. Dr. Cochrane concluded that, for "reasons described in the 12/08/06 forensic report," and "confirmed by the Risk Panel," the Defendant "continues to meet the criteria for commitment." (6-20-08 Report 4.)

The 2006 report, which was adopted for purposes of the 2008 risk assessment report and included in the evidence considered by this Court, contained an analysis of twenty-three well-recognized risk and protective factors that have been shown to correlate positively and negatively with future violent behaviors. These factors are organized into four categories: Individual/Dispositional Factors; Historical Factors; Contextual Factors, and; Clinical Factors. The Court notes that while the use of risk assessments, which involve clinical judgments following consideration of such risk and protective factors, is strongly endorsed in current professional standards (12-8-06 Report 7), their usefulness is limited. As stated in the December

2006 report:

> In many cases, predictions of dangerous or violent behavior have limited reliability, and over time these predictions become less reliable; however, when certain well researched risk factors are considered, useful information can be gained about an individual's relative risk of dangerous behavior. This information can also be helpful in developing future interventions and plans to aid in managing a person's risk.

(12-8-06 report 7.)

Among the nine Individual/Dispositional Factors, only the factors of cognitive predispositions, affective predispositions, and impulsivity indicated that the Defendant was at a higher risk for violence.[2] Regarding the cognitive predisposition, Dr. Cochrane explained that the Defendant has "hostile attribution bias," which is "pervasive paranoid or delusional beliefs." (Evid. Hr'g Tr. 24.) These delusions include the Defendant's belief that the court, the attorneys, his doctors, prison staff, and FBI officials are involved in an elaborate conspiracy to harm him and his family, including having him illegally incarcerated. (Evid. Hr'g Tr. 24–25.) The Defendant's comments throughout the evidentiary hearing, as well as his comments during an earlier conference, were consistent with such delusions. (5-6-08 Hr'g; 8-8-08 Hr'g.) Regarding affective predispositions, the report noted that although the Defendant denied intending to cause harm to anyone, he had expressed considerable antipathy toward law enforcement, his mother's "body double," and mental health professionals because he holds them responsible for his misfortunes and the harmed caused to his real mother.

A third Individual/Dispositional Factor, anger control, remained unknown because, while the Defendant had been able to control his anger at Butner, it was in the context of a controlled,

---

[2] The factors that did not suggest a risk of violence include the Defendant's age, socioeconomic factors, level of intelligence, neurological impairment, and psycopathy.

institutional setting. Moreover, his anger control appeared to be partially related to the symptoms of his mental illness that were in remission.

Among the Historical Factors included in the assessment, the Defendant's family history, educational history, and intelligence did not indicate an increased risk for violence. The Defendant's employment and residential instability slightly increased his risk. However, his past history of violence and criminal activity, which Dr. Cochrane noted was "probably the best single predictor of future violence, with risk increasing with each prior episode," placed him in the high risk category.

Several of the Contextual Factors weighed in favor of finding that the Defendant is at risk for violence, including the health and financial stressors that would be present upon his release, his lack of social support, the broad range of targets that the Defendant has threatened in the past, and access to alcohol and drugs that the Defendant previously abused. Also predictive of future violence was the fact that the circumstances that existed during his previous violent behavior had not changed.

During the assessment of the Clinical Factors, the Defendant's diagnosed major mental disorder, and his active psychotic symptoms (persecutory delusions) were noted as risk factors. It was also noted that if he discontinued the low doses of the antipsychotic medication that were responsible for alleviating his other symptoms, he would be at further risk of relapse into a manic or psychotic episode. Dr. Cochrane did not think the risk that the Defendant would abuse substances, such as cocaine or alcohol, was high, and this factor did not significantly raise his risk level. However, if the Defendant did resume using these substances, he would present a much greater risk for violence than if he did not use them, and the health issues that contributed

to his previous abuse of these substances still remained.[3]

The Defendant counters these risk factors by pointing to his behavior at Butner within the last two years. He argues that there is no established connection between his hostile attribution bias and "any overt, aggressive behavior." (Def.'s Br. 7, DE 170.) He contends that he has been able to control his anger, which "demonstrates his ability to separate words from actions." (Def. Br. 7.) In support of this argument, the Defendant notes that, although he was verbally abusive and displayed anger towards people during the evaluation period, these verbal outbursts did not lead to physical activity or harm. (Evid. Hr'g Tr. 16.) The Defendant also argues that his past criminal history, which will never change, is not the best indicator of his present state. Instead, he urges that "the best guide in determining whether he is a threat" is "his incident-free record since his placement at Butner." (Def.'s Br. 7.) The Defendant submits that being uncooperative, rude, and verbally oppressive does not make him a threat or a danger to others. (Def.'s Br. 8.)

The only changes in the Defendant's life since his commitment, indeed since he threatened to kill his mother because he believed that she was an imposter, are his controlled, institutional surroundings and his low doses of antipsychotic medications. If unconditionally discharged, the Defendant would experience a drastic change from the highly controlled and supervised environment to complete independence. There is nothing in the record to indicate that the Defendant would be subject to any type of supervision if discharged. The Defendant continually refuses all efforts by the Butner staff to develop a conditional release plan. The Defendant also has a history of medical noncompliance and has given no assurances that he would continue with his medication if discharged or would allow others to ensure his

---

[3] The Defendant is HIV positive.

compliance, even at the current dosages that he accepts because he believes that it helps him sleep.[4] The Defendant lacks insight into his illness and would not connect the increase in symptoms to a failure to comply with a medical regime. Therefore, when evaluating the potential risk associated with the Defendant's release, the Court must presume that the Defendant will not be medicated and, further, that conditional release is not currently an option.

The Defendant's unwillingness to assure any level of medication to treat his symptoms is problematic because he has not established that he can function without acting upon his delusions when he is not medicated. He has exhibited some control in this area while at Butner, but it is within the institutional setting and with the benefit of low doses of antipsychotic medication. The major focus of his delusions are his mother, and her imagined ties to the FBI or other law enforcement who the Defendant believes are conspiring against him. But the Defendant's ability to act against his mother's supposed imposter while he is at Butner is quite limited. It might be that he does not call and threaten to kill her knowing that he has no means to carry out such a threat.

The Defendant did not express any intent to move to South Bend, where his mother resides, if he were discharged. In fact, he stated that he intended to move to Florida. On the other hand, the hostility that the Defendant directs at his mother, whom he believes to be an imposter, and the anger that these delusions invoke, may cause him to seek her out. These are the same

---

[4] During the last evaluation period, the Defendant has not indicated that he would be willing to continue with the doses of medication he currently takes. However, because he takes them on the basis that they help him sleep, this may be a condition he is willing to abide by if released. The current record does not speak to this. The December 2006 report noted that the Defendant insisted that he would continue with his current medication to help him sleep, but that the Risk Assessment Panel believed the low dose "would not likely prevent another manic episode." (12-8-06 Report 17.) This finding, however, does not appear to be supported by the absence of any such episodes during his commitment.

delusions that caused the Defendant to make threats against his mother and put her in fear for her life, and the same delusions that led the Court to conclude that the Defendant was unable to appreciate the nature and quality, or the wrongfulness, of his conduct. This risk remains unchanged if the Defendant's prior symptoms return, including a return to a manic state. The Court notes that the Defendant even now does not express regret for his actions, except to the extent that they have caused him to be committed, further supporting the conclusion that the conditions that existed when the Defendant threatened his mother remain largely unchanged from the conditions that would exist if he were discharged. Given the lack of clearly established plans regarding where he would reside, and the lack of any guarantee (enforced through monitoring or otherwise) that he would not seek out his mother or her imposter, the Defendant has not met his burden to establish that he would not seek to harm the person that he believes has killed his mother and is posing as her body double.

The Court understands the Defendant's frustration regarding factors that he cannot now control, such as his past history of criminal conduct and aggressive behavior, but Dr. Cochrane explained that this factor could be overcome if the person is

> low risk in virtually every other area coupled with, for example, the fact that the individual is now psychiatrically stable, they would be going somewhere where there might be structured supervision to ensure mental health treatment. There are several other factors that could override, so to speak, the person's criminal history that would allow them to be safely placed in the community.

(Evid. Hr'g Tr. 27.) Dr. Cochrane described, essentially, conditional release. The Court agrees that, given the factors that indicate the Defendant's risk and the need to manage that risk, only a conditional release will satisfy the requirements of the statute, at least on the current record. Unfortunately, the very nature of the Defendant's mental disease and its resulting delusions

appear to prevent him from aiding with any planning for such a release. The Defendant is correct that being uncooperative is not indicative of dangerousness. But, in this case, it prevents the Defendant from taking the actions that would facilitate his release. There is no basis to believe that, in this unstructured and unsupervised environment, the Defendant would not return to pre-detention and pre-medicated behaviors.

The Court is mindful that any risk the Defendant's discharge poses must be due to a present mental disease or defect. Dangerousness that is not linked to the Defendant's mental disease will not preclude discharge. That being said, the risk the Defendant poses to others and to property of others is due to his delusions, which are a direct symptom of his mental disease. When these delusions are accompanied by mood disturbance and a reduced ability to control anger, which is likely to occur when the Defendant is in an unmedicated state, he acts on the delusions and is unable to appreciate the wrongfulness of his conduct. Until the Defendant can prove that, although he suffers from a mental disease or defect, he can be released under conditions that would reduce the risk of acting violently against those whom he perceives are persecuting him or harming his mother, he is not entitled to be released from custody. That is not to say that the Defendant's current state, even if severely undermedicated, would not satisfy this burden. Rather, what is lacking is any proof that the Defendant would agree upon release to be monitored or restricting in his activities, or to be medicated at his current levels.

## ORDER

Upon consideration of all the evidence, the Court finds that the Defendant has not proven by clear and convincing evidence or by a preponderance of the evidence that his release would

not pose a substantial risk of danger to another person or property due to a mental illness, and

has not established the regimen of medical, psychiatric, or psychological care or treatment that

would allow for his conditional discharge. The Court ORDERS that the Defendant, Christopher

Wabol, continue with his commitment to the custody of the United States Attorney General. The

Clerk is directed to provide a copy of this Opinion and Order to FMC Butner, attention Inmate

Systems Management, at facsimile number (919) 575-4866. An official copy is to be sent to the

Records Office at FMC Butner.

SO ORDERED on February 13, 2009.

s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION